UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PUGET BIOVENTURES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-CV-465 JD |
| | ) | |
| BIOMET ORTHOPEDICS LLC, and | ) | |
| BIOMET MANUFACTURING, LLC, | ) | |
| | ) | |
| Defendants. | | |

## OPINION AND ORDER

Hudson Surgical Design, Inc. initiated this lawsuit against Biomet Orthopedics LLC and Biomet Manufacturing, LLC (collectively, "Biomet") in the Northern District of Illinois on July 19, 2010, alleging infringement of its patent for "Methods and Apparatus for Femoral and Tibial Resection," U.S. Patent No. 7,344,541 (the "'541 patent"). Hudson Surgical filed its first amended complaint two months later, in September (the "FAC"). [DE 17] Biomet answered the FAC that same month. [DE 19] On motion, the case was then transferred to this Court in November 2010 and then ordered stayed in December 2010, pending reexamination of the '541 patent before the United States Patent and Trademark Office. During the stay, Hudson Surgical assigned ownership of the '541 patent to Puget Bioventures, LLC ("Puget").

The stay was lifted in August 2017 following the reexamination, and the parties were ordered to exchange contentions and proceed with claims construction. On November 3, 2017, Biomet filed its Motion for Judgment on the Pleadings. [DE 114] For the reasons stated herein, the Court will grant Biomet's motion in part and deny in part.

1

**FACTUAL ALLEGATIONS**

The '541 patent issued to Hudson Surgical on March 18, 2008. Only four months later, Hudson Surgical sent a letter to Biomet, informing Biomet of the '541 patent. The letter advised Biomet that Hudson Surgical believed the '541 patent covered several of Biomet's products. Subsequent alerts issued in 2010, when Puget sent Biomet charts demonstrating how Biomet's products were purportedly infringing on the '541 patent. Despite these warnings, Biomet took no steps to avoid infringement of the '541 patent. Specifically, Biomet designed, made, marketed, provided, distributed, and sold potentially infringing products to hospitals and surgeons, and in so doing, allegedly committed direct infringement of the '541 patent (specifically, patent claims 21-33 and 41-48). These products include Biomet's MIS TKA instruments and techniques. Furthermore, Biomet induced and contributed to infringement of the '541 patent by providing its infringing products to hospitals and surgeons, and by training surgeons to use said products (specifically, patent claims 1, 2, 5-13, 21-33, 41-48). Finally, Puget alleges that all of Biomet's purported direct and indirect infringement has been willful.

**STANDARD**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Therefore, the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Biomet argues for dismissal on three grounds. First, and most briefly, Biomet submits that many of the patent claims alleged in the FAC should be dismissed as unenforceable because they were cancelled during reexamination. Biomet also argues that claims 45 and 47 of the '541 patent are patent ineligible, and therefore Puget cannot allege that Biomet infringed on those claims. Finally, Biomet maintains that the allegations of infringement are insufficiently pled.

**A.    Cancelled Claims**

The following claims of the '541 patent were cancelled during the reexamination: 1-30, 32, 34, 41-44, 46, 48, 53, and 54. [DE 118-5] Because of this, Biomet argues that Puget's infringement allegations regarding claims 1, 2, 5-13, 21-30, 32, 41-44, 46, and 48 should all be dismissed because those claims are unenforceable. The Court agrees. The Federal Circuit has made clear that "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). So, Puget's infringement allegations based on any of the cancelled claims are moot and must be dismissed for lack of jurisdiction. *See SHFL Entm't, Inc. v. DigiDeal Corp.*, ---Fed. App'x---, 2018 WL 2049238, at

*3 (Fed. Cir. May 2, 2018) ("Suits based on cancelled claims must be dismissed for lack of jurisdiction, however.") (citing *Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*, 645 Fed. App'x 1018, 1023 (Fed. Cir. 2016) (upholding the district court's dismissal for lack of jurisdiction because *Fresenius* rendered the suit moot as to the claims cancelled after reexamination)); *see also CFTC v. Bd. of Trade of City of Chicago*, 701 F.2d 653, 656 (7th Cir. 1983) ("[A] dismissal for mootness is a dismissal for lack of jurisdiction …."). Puget does not oppose the dismissal of its allegations related to the '541 patent's cancelled claims in response to the instant motion. The Court will therefore dismiss these moot allegations for lack of jurisdiction, without prejudice.

**B.      Patent Eligibility of Claims 45 and 47**

Biomet contends that claims 45 and 47 of the '541 patent are patent ineligible under 35 U.S.C. § 101. Congress has defined which inventions are patentable in § 101 of the Patent Act, which states in its entirety:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

The Patent Act defines the term "process" as "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100.

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).[1] Whether a patent's claims are patent ineligible involves a two-part inquiry. First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If this first determination is met,

---

[1] Laws of nature and natural phenomena are not at play here – only the concept of "abstract ideas."

4

the Court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 77-78).

The first *Alice* step requires the Court to consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015). For clarity's sake, the "entirety" of claims 45 and 47 is not limited to the language contained at 44:16-24 and 44:30-38 of the '541 patent. As *dependent* claims, claims 45 and 47 include all of the limitations of the claims from which they depend. *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 1000 (Fed. Cir. 1995) ("An extensive body of law, statutory and judgemade, governs the construction and legal effect of patent claims; for example … that a dependent claim includes all of the limitations of the independent claim[.]"). Claim 45 depends directly from independent claim 24, and claim 47 depends solely from claim 46, which itself depends solely from independent claim 24. Therefore, when the Court addresses claims 45 and 47, it addresses them in their "entirety," which includes the language of claim 24 and (when applicable) claim 46.

The second *Alice* step requires the Court to "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted). "Step two is 'a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355).

The operative language of patent claims 45 and 47 and the parties' arguments before the Court mirror the claim language and issues recently ruled on in the Court's Order granting in part and denying in part Biomet's Motion to Dismiss in the parallel litigation, N.D. Ind. Case No. 3:17-cv-502. [ECF No. 34] To avoid unnecessary duplication here, the Court will adopt its analysis and holding from that prior Order. The Court has independently verified that patent claims 45 and 47 are directed to the abstract idea of "providing" instrumentation and information on how to perform a medical procedure, and that they contain no inventive concept that transforms their nature into a patent-eligible application of that abstract idea. Because of this, the Court finds them ineligible under 35 U.S.C. § 101. Puget's allegations of infringement related to patent claims 45 and 47 will therefore be dismissed, with prejudice.

C.  **Sufficiency of the Pleadings**

Based on all of the above, Puget's allegations of infringement will be dismissed except for those relating to claims 31 and 33 of the '541 patent. So, the Court lastly turns to whether Puget has sufficiently pled the remaining allegations in its FAC. As to its allegations of direct infringement, Puget concedes that those charges do not relate to patent claims 31 and 33. [DE 118 at 29] Thus, the scope of Puget's lawsuit at this point can be even further limited to the allegations that Biomet willfully induced and contributed to the infringement of claims 31 and 33 (indirect infringement). Biomet urges the Court to dismiss these allegations as well, for various reasons. First, Biomet argues that the amendments proposed during the reexamination of the '541 patent negate any *mens rea* for indirect infringement. Second, Biomet maintains that Puget has not pled all the necessary elements for induced and contributory infringement. Third, Biomet suggests that Puget's allegation of willful infringement fails under the Supreme Court's recent ruling in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

### 1. The Reexamination's Impact on *Mens Rea*

Puget alleges that Biomet committed two forms of indirect infringement: induced and contributory infringement. Each of these forms involve a level of *mens rea*. To bring a claim of induced infringement, "[t]he patentee must also show that the alleged infringer possessed the requisite intent to induce infringement, which [the Federal Circuit has] held requires that the alleged infringer knew or should have known his actions would induce actual infringements. *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1363-64 (Fed. Cir. 2017) (internal citations and quotations omitted). As for contributory infringement, a plaintiff must show that the defendant "'knew that the combination for which its components were especially made was both patented and infringing ….'" *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

To support the required *mens rea*, Puget alleges that Biomet was put on notice by letter dated July 14, 2008 [DE 17 ¶ 13], and then again in March and June 2010 when Hudson Surgical sent Biomet charts comparing the '541 patent against the accused products. *Id.* ¶ 14. Biomet argues that, as a matter of law, it could not have had the *mens rea* to commit indirect infringement because, by January 2011, Puget chose to submit amended claims during the reexamination of the '541 patent. According to Biomet, proposing an amendment to avoid invalidity during reexamination "voids the original claim and an accused indirect infringer cannot intend to induce or contribute to infringement of an invalid claim that no longer exists." [DE 115 at 28] Under this theory, the proposed amendments here wiped out their corresponding original patent claims, and so, Puget's 2008 and 2010 notices (which pertained to the original

patent claims and *not* the amended claims) are irrelevant for the purpose of pleading the *mens rea* needed for indirect infringement.

But Biomet's position is squarely at odds with the established notion that amendments to claims during the reexamination process "are not effective until the certificate issues." *Biomet Orthopedics, LLC v. Puget Bioventures, LLC*, 640 Fed. App'x 868, 870 (Fed. Cir. 2016). This is black letter law. *See* 37 C.F.R. § 1.530(k) ("Although the Office actions will treat proposed amendments as though they have been entered, the proposed amendments will not be effective until the reexamination certificate is issued and published."). No reexamination certificate issued as a result of the proceedings before the Patent Office, and the parties do not dispute that fact.[2] Nonetheless, Biomet essentially asks this Court to rule, as a matter of law, that once Puget proposed amendments during reexamination, it signaled open season on the '541 patent's original claims. To hold otherwise, urges Biomet, "would work an enormous injustice and undermine any public notice function in the patent examination process." [DE 122 at 18] However, those who read the very rules of patent examination procedure must know that a patent's original claims are not undone by the proposal of amendments; the Manual of Patent Examining Procedure explicitly cautions that "amendments are not legally effective until the reexamination certificate is issued and published." MPEP § 2234. Submitting amendments during reexamination does not have the legal effect that Biomet believes it does.

Moreover, even if the amendments had become legally effective by way of a reexamination certificate, Biomet's argument would still fail because it makes no effort to show that the amendments here made substantive changes to the original claims. *See Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("[W]hen the reexamined or reissued

---

[2] Indeed, Biomet itself cited the lack of a certificate in its motion. [DE 114 ¶ 5]

claims are identical to those of the original patent, they shall 'have effect continuously from the date of the original patent.'") (quoting 35 U.S.C. § 252). Identical amendments here would undermine Biomet's *mens rea* argument: "Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Bloom Eng'g*, 129 F.3d at 1250. The term "identical" in this context "does not mean verbatim, but means at most without substantive change." *Id.* (citing *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984)).

While determining whether an amended claim is legally identical to an original claim does not depend on any absolute rule, "[d]etermination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant information." *Id.* (citing *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed. Cir. 1991)). Here, Biomet's motion offers no such analysis, and its reply brief merely highlights the additional language of the amended claims and states that Puget "did not merely correct a typo or clarify a word." [DE 122 at 18-19] Without more, such as an analysis of the amendments against the patent's specification and other relevant information, Biomet's filings do not suffice, and the Court will not make arguments on its behalf. For these reasons, Biomet's legal argument on *mens rea* fails.[3]

---

[3] Biomet's motion also expresses concern that Puget is trying to hold Biomet liable for alleged infringement that occurred after the '541 patent's expiration in December 2015. But Puget's response makes clear that it is not seeking damages for willful infringement that may have occurred after the patent expired. [DE 118 at 27]

### 2. The Remaining Elements of Indirect Infringement

Apart from *mens rea*, Biomet argues that Puget's FAC still fails to set forth facts supporting the basic elements of induced and contributory infringement. Induced infringement occurs when a party "actively induces infringement of a patent." 35 U.S.C. § 271(b). This requires a plaintiff to "show that the accused inducer took an affirmative act to encourage infringement …." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Biomet argues that the FAC lacks factual allegations as to this element. However, the FAC clearly alleges that Biomet provided implants and the accused products "to hospitals and surgeons throughout the United States" and additionally trained surgeons on how to use them. [DE 17 ¶¶ 16-17] Biomet offers no reason as to why these allegations do not describe affirmative acts undertaken to encourage infringement, and so its argument as to this element of induced infringement falls short.

Contributory infringement occurs when a party sells "a component of a patented machine … constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use …." 35 U.S.C. § 271(c). This claim requires a plaintiff to show that "defendant's components have 'no substantial non-infringing uses.'" *Cross Med.*, 424 F.3d at 1312 (quoting *Golden Blount*, 365 F.3d at 1061). Puget alleges that Biomet designed, made and adapted, marketed, provided, distributed, and sold its Biomet MIS TKA instruments and techniques (the accused products), and that those products "are not staple articles or commodities of commerce suitable for substantial non-infringing use." [DE 17 ¶¶ 10-11] Biomet argues that the lack of alleged facts explaining *how* the accused products have no non-infringing use should prevent the contributory infringement claims from

proceeding further. In support, Biomet cites *Bill of Lading* for the proposition that Puget must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." [DE 115 at 31 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012))]

While Puget's allegations might come off as conclusory, "many courts post-*Iqbal* have not demanded detailed factual allegations that the defendants' products lack substantial noninfringing uses." *Crypto Research, LLC v. Assay Abloy, Inc.*, 236 F. Supp. 3d 671, 688 (E.D.N.Y. 2017) (citing *Conair Corp. v. Jarden Corp.*, No. 13-cv-67020, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (collecting cases)). The reason being the obvious difficulty plaintiffs would face in pleading a negative without the benefit of discovery. *Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-cv-8814, 2016 U.S. Dist. LEXIS 34061, at *11 (S.D.N.Y. Mar. 16, 2016). The Court does not believe *Bill of Lading*'s language requires Puget to plead a null set under the plausibility standard of *Iqbal* and *Twombly*. *See Driessen v. Sony Music Entm't*, No. 2:09-cv-0140, 2013 U.S. Dist. LEXIS 120309, at *7 (D. Utah Aug. 22, 2013) (concluding the same). To hold otherwise would be to require Puget to plead with specificity something that allegedly does not exist. *See id.*

Because claims for induced and contributory infringement cannot survive absent an underlying act of direct infringement, the Court must still address whether the FAC contains sufficient allegations of direct infringement. *Bill of Lading*, 681 F. 3d at 1333 ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'") (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)). The Court concludes that it does. "To state a claim for indirect infringement … a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an

inference that at least one direct infringer exists." *Id.* at 1336 (emphasis in original). In addition, direct infringement in the inducement and contributory contexts may be pled through allegations of the sale of the accused product together with defendant's instructions on how to use it. *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 886-87 (W.D. Tenn. 2017) (citing *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) and *Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 767 (N.D. Ill. 2015)).

Here, Puget alleges that Biomet indirectly infringed the '541 patent by selling the accused products in this District and elsewhere in the United States, training surgeons on how to use them, and that the subsequent use of these products indeed infringed on the '541 patent. [DE 17 ¶¶ 34-35] Taken together, these allegations sufficiently set forth direct infringement in the induced and contributory infringement contexts. *See Susan McKnight*, 273 F. Supp. 3d at 886-87 (denying motion to dismiss induced and contributory infringement claims where plaintiff alleged sale of infringing products along with defendant's instructions for use, thereby sufficiently alleging the required direct infringement). Moreover, all of the above allegations support the inference that "at least one direct infringer exists," *Bill of Lading*, 681 F. 3d at 1336, and Puget collectively identified "surgeons" who infringed the '541 patent by using Biomet's accused products. [DE 17 ¶ 16]

For all of these reasons, the Court will deny Biomet's request to dismiss Puget's claims of indirect infringement. Further supporting the Court's decision are this District's Local Patent Rules, which require the parties to exchange specific infringement contentions and documents at the outset of a case. *See* N.D. Ind. L.P.R. 3-1; *see also Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350, 2017 U.S. Dist. LEXIS 122635, at *11 (E.D. Tex. May 15, 2017) ("The court refuses to require the detail that Google demands, especially in light of this district's Local

Patent Rules, which require that a Plaintiff serve infringement contentions that must detail the accused devices and put Google on sufficient notice shortly after pleadings."); *Palmer Hamilton, LLC v. AmTab Mfg. Corp.*, No. 16-cv-522, 2016 U.S. Dist. LEXIS 157735, at *3 ("[T]his court requires standardized pretrial disclosures that force both sides to lay out their core contentions element-by-element early in the case. Given that both sides will have to put their cards on the table relatively early in the case, motions attacking the pleadings are generally a waste of resources for the parties and the court."). These local provisions should help alleviate, if not eliminate, Biomet's specificity concerns. Requiring another amended complaint at this juncture appears especially unnecessary, as contentions have already been exchanged.

### 3. Willful Infringement

Puget alleges that Biomet's infringement in this case has been willful such that enhanced damages may apply. [DE 17 ¶ 20] Under the Patent Act, the district court, at its discretion, "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284; *see also Halo*, 136 S. Ct. at 1926 ("A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). "In applying this discretion, district courts are 'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." *Halo*, 136 S. Ct. at 1935 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). "Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Halo*, 136 S. Ct. at 1935.

As the Supreme Court noted in *Halo*, "[t]he sort of conduct warranting enhanced damages has been variously described in [its] cases" not only as "willful" and "egregious," but

13

also as "wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." 136 S. Ct. at 1932. Citing *Halo*, Biomet urges the Court to dismiss Puget's allegations of willful infringement for being bereft of any facts supporting egregious or wanton behavior. [DE 115 at 33] *Halo*'s effect on the pleading standard for willful infringement, however, remains unclear. *Compare John Keeler & Co. v. Heron Point Seafood, Inc.*, No. 14 Civ. 1652, 2016 WL 6839615, at *4 n.2 (N.D. Ohio July 8, 2016) ("[*Halo*], in which the Supreme Court abrogated the two-part test for proving willful infringement, may also affect the pleading standard."), *with Nanosys, Inc. v. QD Vision, Inc.*, No. 16 Civ. 01957, 2016 WL 4943006, at *8 (N.D. Cal. Sept. 16, 2016) ("*Halo* did not address pleading standards at the motion to dismiss stage."); *see also Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 499, 501 (D. Del. 2017) (citing *Halo* and stating "[a]t the pleading stage, it is not necessary to show that the case is egregious").

But what *is* clear is that, "[a]t a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of the specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885, 2017 U.S. Dist. LEXIS 1243, at *12 (S.D.N.Y. Jan. 4, 2017). To illustrate, the Supreme Court made clear that, "[a]s with any exercise of discretion, courts should continue to take into account *the particular circumstances of each case* in deciding whether to award damages, and in what amount." *Halo*, 136 S. Ct. at 1933 (emphasis added). Allowing allegations of willful infringement to advance past the current stage appears prudent, given that, in the opening round of litigation, the full extent of the circumstances accompanying a given case will seldom be readily apparent to the Court.

Biomet cites two cases in which district courts dismissed allegations of willful infringement along the lines of Justice Breyer's concurring opinion in *Halo*, which added that "the Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*." 136 S. Ct. at 1936 (Breyer, J., concurring) (emphasis in original). In both *Susan McKnight*, 273 F. Supp. 3d. 874, and *CG Tech.*, 2017 WL 662489 at *4 (D. Nev. Feb. 17, 2017), plaintiffs based their allegations of willful infringement and the requisite knowledge solely on the fact that they had sent a letter to defendants, notifying defendants of their allegedly infringing conduct. *See generally, id.* The allegations that defendants continued to manufacture or sell the accused products after receiving the letters did not sufficiently allege willful infringement. *Id.*

This case is distinguishable. Here, not only did Hudson Surgical send Biomet a letter in July 2008 alerting Biomet to the '541 patent, potential infringement thereof, and purported need for a license [DE 17-2], but Hudson Surgical alerted Biomet to its potential infringement twice more in 2010, by providing it with a letter[4] detailing Biomet's ongoing infringement and demonstrative charts applying the '541 patent's claims to Biomet's accused products. [DE 17 ¶ 14] Taken together, the Court finds this information to exceed that involving mere knowledge of the patent and "nothing more" envisioned by Justice Breyer. According to the allegations, Biomet was *repeatedly* warned of infringement, yet it carried on with business as usual.

---

[4] The letter itself was not mentioned in the FAC but was attached to Biomet's response to the instant motion. [DE 118-4] Nonetheless, the Court may consider the letter as supportive of plausibility because it is consistent with the allegations. *See Lifetime Indus. v. Trim-Lok, Inc.*, Case No. 3:16-cv-559, 2017 U.S. Dist. LEXIS 114581, at *11 (N.D. Ind. July 24, 2017) ("Because those additional statements are consistent with and expound on the materials in the complaint, the Court may consider them even at the pleading stage, and they suffice to allege completion of this step as well.") (citing *Echols v. Craig*, 855 F.3d 807, 811 (7th Cir. 2017)); *see also John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.").

Given the need to account for the particular circumstances of this case in deciding whether enhanced damages should apply under § 284, the Court will deny Biomet's request to dismiss Puget's allegations of willful infringement. *See Bobcar*, 2017 U.S. Dist. LEXIS 1243, at *13 ("It is possible that further development of the facts of this case may reveal that it is not an 'egregious case' justifying enhanced damages, but at the pleading stage, especially in light of *Halo*, [plaintiff] has carried its burden."); *see also Finjan, Inc. v. ESET, LLC*, Case No. 3:17-cv-0183, 2017 U.S. Dist. LEXIS 40784, at **10-11 (S.D. Cal. Mar. 21, 2017) (denying motion to dismiss allegations of willful infringement but noting that defendant "may introduce evidence of its response to [plaintiff's] notice of infringement and the steps it took to address those contentions.").

## CONCLUSION

Based on the foregoing reasons, the Court GRANTS in part and DENIES in part Biomet's Motion for Judgment on the Pleadings. [DE 114] The Court hereby DISMISSES Puget's allegations relating to claims 1, 2, 5-13, 21-30, 32, 41-44, 46, and 48 of the '541 patent, without prejudice. The Court also DISMISSES Puget's allegations relating to claims 45 and 47 of the '541 patent, with prejudice. The Court lastly DISMISSES Puget's allegations of direct infringement of claims 31 and 33 of the '541 patent as conceded by Puget. The Court DENIES all other requested relief. In sum, this case is now limited in scope to Puget's allegations that Biomet willfully induced and contributed to the infringement of claims 31 and 33 of the '541 patent.[5]

---

[5] Puget's opposition to the instant motion lists patent claims 49 and 51 as among those at issue in this lawsuit, but they clearly are not – the FAC makes no mention of them. Puget could have submitted another amended complaint to include these claims. But, despite being well aware of its ability to amend the pleadings without leave prior May 1, 2018 [DE 118 at 33], Puget chose not to do so.

SO ORDERED.

ENTERED: July 2, 2018

                                                  /s/ JON E. DEGUILIO  
                                        Judge  
                                        United States District Court